UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------X
MERCHANTS INSURANCE GROUP and
MERCHANTS INSURANCE GROUP a/s/o
DANIEL HESS and DEEJAY CARPET                    MEMORANDUM AND ORDER
CO., INC.,
                                                 Civil Action No.
          Plaintiff,                             CV-03-6017 (DGT)(RLM)

     v.

MITSUBISHI MOTOR CREDIT
ASSOCIATION, and MITSUBISHI MOTOR
CREDIT OF AMERICA, INC.,

          Defendants.

-------------------------------X


Trager, J:

     This is an action by a New York insurance company,

Merchants Insurance Group ("plaintiff" or "Merchants"), to

obtain contribution and indemnity from defendants Mitsubishi

Motor Credit Association and Mitsubishi Motor Credit of America,

Inc. (collectively "defendants" or "MMCA"), California

corporations.  Merchants' claim arises from an automobile

accident and a subsequent personal injury lawsuit, in which

Merchants was obligated to pay the entire sum of a jury verdict

rendered against the parties it had insured, despite the fact

that such parties were only found to be 30% at fault.

Accordingly, Merchants is seeking to recover the amount it

overpaid from MMCA, the lessor of the other vehicle involved in

the automobile accident.  In an earlier opinion, it was held that this suit was barred by 49 U.S.C. § 30106(a), commonly referred to as the "Graves Amendment."  However, the Second Circuit reversed this determination and remanded for consideration of the parties' remaining contentions.  Thus, it must now be determined whether, as Merchants contends, it can collect from MMCA as a vehicle "owner" under New York law, or whether, as MMCA contents, this lawsuit is barred because MMCA's insurer – which otherwise would be responsible for satisfying this claim by Merchants against MMCA – has become insolvent.

For the reasons explained below, it is held that Merchants cannot maintain this suit against MMCA, the insured of an insolvent insurer.  Accordingly, Merchants' motion for summary judgment is denied, and MMCA's motion for summary judgment is granted.

## Background

On January 31, 1996, non-party Jocelyn DeJean ("Jocelyn"), a New York resident, entered into a long term lease/purchase option agreement ("the agreement") with MMCA, a multinational corporation domiciled in California, for a Mitsubishi Galant ("the DeJean vehicle").  July 12, 2006 Aff. of William S. Matlin in Support of Pl.'s Mot. for Summ. J. ("July 2006 Pl. Aff.") ¶ 9; July 12, 2006 Aff. of Howard F. Strongin in Support of

Def.'s Mot. for Summ. J. ("July 2006 Def. Aff.") ¶ 8; August 9, 2006 Aff. of William S. Matlin in Opp'n to Mot. for Summ. J. by MMCA ("Aug. 2006 Pl. Aff.") ¶ 7. According to its terms, New York law applied to the lease. August 7, 2006 Aff. of Howard F. Strongin in Opp'n ("August 2006 Def. Aff."), Ex. A ("Agreement") ¶ 16(h). Jocelyn insured the vehicle through Allstate Insurance Company for $100,000, pursuant to the terms of the agreement. July 2006 Pl. Aff. ¶ 14; Agreement ¶¶ 21-22. Furthermore, MMCA maintained a contingent liability and excess liability policy on the DeJean vehicle through Reliance Insurance Company ("Reliance"), an insurance company domiciled in Pennsylvania, for $5,000,000. Defendants' 56.1 Statement ("Defs.' 56.1 St.") ¶ 4; Plaintiffs' 56.1 Statement ("Pl.'s. 56.1 St.") ¶ 4; July 2010 Def. Response Letter, Ex. A.

On November 27, 1997, Jocelyn was a passenger in the DeJean vehicle when it collided with a van owned by DeeJay Carpet Co., Inc. ("DeeJay"), driven by Daniel Hess ("Hess") and insured by Merchants. July 2006 Def. Aff. ¶¶ 3, 6; Defs.' 56.1 St. ¶¶ 6-8; July 2006 Pl. Aff. ¶ 16; Pl.'s 56.1 Statement ¶¶ 6-8. At the time of the accident, Jocelyn's son, Jerry DeJean, was driving the DeJean vehicle with her permission. Defs.' 56.1 St. ¶ 7; Pl.'s 56.1 St. ¶ 7.

Sometime in 1998, Jocelyn commenced a lawsuit ("the DeJean action") in New York State Supreme Court, Queens County, against

DeeJay, Hess, and Jerry and Patrick DeJean to recover damages for personal injuries.[1]  July 2006 Pl. Aff. ¶ 5.  On March 26, 2003, a jury returned a verdict for $700,000 in Jocelyn's favor, apportioning 70% of the fault to Jerry DeJean, and 30% of the fault to DeeJay and Hess.  July 2006 Pl. Aff. ¶ 6.  Two years later, on August 26, 2005, a judgment of $855,376.64 was finally entered in the DeJean action.[2]  July 2006 Pl. Aff. ¶ 8; July 2006 Def. Aff. ¶ 7.  Although the jury only apportioned 30% of the fault to DeeJay and Hess, all of the defendants were held jointly and severally liable.  July 2006 Matlin Aff. ¶ 16; Pl.'s Am. V. Compl. ¶¶ 35-36.  Therefore, Merchants, as DeeJay's insurer, was ultimately obligated to pay the entire verdict, which Merchants satisfied on or about December 12, 2005, at a reduced amount of $600,000.  July 2006 Def. Aff. ¶ 7.

In October 2003 – after the jury verdict in the DeJean action – Merchants filed the present lawsuit in New York State Supreme Court, Queens County, against MMCA, seeking contribution and indemnity for the amount that Merchants had to pay Jocelyn in excess of its proportionate liability.  See Merchants Ins. Group v. Mitsubishi Motor Credit Ass'n, 525 F. Supp. 2d 309, 311

---

[1] Patrick DeJean is also Jocelyn's son.  It is unclear from the record why Patrick DeJean was named in this lawsuit.

[2] The reasons for this delay are unclear from the record.

(E.D.N.Y. 2007) ("Merchants I").  On or about November 26, 2003, the case was removed to federal court.  Id.

Ordinarily, Merchant's claim against MMCA for contribution and indemnity would have been covered by MMCA's excess insurance policy with Reliance.  However, prior to the jury verdict and entry of judgment in the DeJean action, MMCA's insurer Reliance was declared insolvent under Pennsylvania law.  July 2006 Def. Aff. ¶ 5; Defs.' 56.1 St. ¶ 4; Defs.' 56.1 St., Ex. B ("Order of Liquidation") ¶ 2; Pl.'s 56.1 St. ¶ 4.  The Order of Liquidation appointed the Insurance Commissioner for Pennsylvania, and her successors, as liquidator of Reliance.  Order of Liquidation ¶ 3.  Furthermore, because Reliance was a multistate insurer, New York appointed an ancillary receiver for Reliance, in accordance with New York Insurance Law Article 74.  Montemarano v. Serio, No. 120239/02, 2003 WL 1870233 (Sup. Ct. New York County March 27, 2003).

Accordingly, on December 30, 2003, after learning of Merchants' lawsuit against it – and, for the first time, learning of the underlying motor vehicle accident – MMCA filed a Proof of Claim with the Pennsylvania liquidator.  July 2010 Def. Response Letter.  As a California domiciliary, MMCA also sought to have the claim against it covered by the California Insurance

Guarantee Association ("CIGA").[3]  Id.  However, on April 13,

2010, CIGA withdrew its defense of MMCA on the ground that CIGA

does not make any payments to solvent insurers.[4]  Id.  MMCA did

not file a claim under New York insurance law.  Id.

Although Merchants' claim for contribution and indemnity

was initially dismissed without prejudice, due to the fact that

judgment had not yet been entered in the DeJean action, the case

was re-opened in June 2006.  Merchants I, 525 F. Supp. 2d at

311.  At that point, Merchants and MMCA both moved for summary

judgment.  Merchants I, 525 F. Supp. 2d at 310.  Merchants

---

[3] CIGA is an association of insurers, created under California's
insurance law, which pays certain claims arising from the
insolvency of insurers.  See Cal. Ins. Code § 1063; Fireman's
Fund Ins. Co. v. Workers' Comp. Appeals Bd., 181 Cal. App. 4th
752, 765 n.5, 104 Cal. Rptr. 3d 641, 649 (Cal. Ct. App. 2010)
("[CIGA is] a statutorily created involuntary association of
insurers that have been admitted to transact business in
California."); Cal. Ins. Guarantee Assn. v. Workers' Comp.
Appeals Bd., 153 Cal. App. 4th 524, 532, 62 Cal. Rptr. 3d 855,
859-60 (Cal. Ct. App. 2007) ("CIGA was created by the
[California] Legislature to establish a fund from which insureds
could obtain financial and legal assistance if their insurers
became insolvent . . . ."); Berger v. Cal. Ins. Guarantee Ass'n,
128 Cal. App. 4th 989, 999, 27 Cal. Rptr. 3d 583, 588 (Cal. Ct.
App. 2005) (California insurance law "spread[s] throughout the
industry a loss suffered by an insured as the result of the
insolvency of an insurer.").

[4] As explained in more detail infra, under California insurance
law, contribution and indemnity payments to insurers, such as
Merchants, are excluded from the types of claims CIGA will
cover.  See Cal. Ins. Code § 1063.1(c)(5) ("'Covered claims'
does not include any obligations to insurers, insurance pools,
or underwriting associations, nor their claims for contribution,
indemnity, or subrogation, equitable or otherwise.").

argued that, under New York Vehicle and Traffic Law Section 388, MMCA qualified as an "owner" of the DeJean vehicle, and thus could be found vicariously liable for the underlying injuries caused by Jerry DeJean's negligence. July 2006 Pl. Aff. ¶¶ 13, 19-20. Therefore, Merchants sought contribution and indemnity for MMCA's proportionate share of the verdict rendered in the DeJean action. Merchants I, 525 F. Supp. 2d at 311.

Defendants argued, to the contrary, that the Graves Amendment preempted application of New York Vehicle and Traffic Law Section 388, and precluded lawsuits against lessors such as defendants.[5] Sept. 2006 Def. Aff. ¶ 4. Furthermore, defendants argued that because MMCA's insurer, Reliance, had become insolvent, California's insurance law should be applied to preclude Merchants' lawsuit. Sept. 2006 Def. Aff. ¶ 4. Finally, defendants submitted that, even if New York insurance law applied to the present dispute, Merchants' lawsuit should still be precluded. Aug. 2006 Def. Aff. ¶ 4.

Defendants' motion was ultimately granted, on the theory that the Graves Amendment precluded Merchants' claim. Merchants I, 525 F. Supp. 2d at 314. However, as noted, the Second Circuit Court of Appeals disagreed, and remanded the case for

---

[5] The Graves Amendment, enacted in 2005, eliminates the liability of owners of motor vehicles who are "engaged in the trade or business of renting or leasing motor vehicles" for harm caused by persons who rent or lease such vehicles. See 49 U.S.C. § 30106.

further consideration of the parties' remaining arguments.

Merchants Ins. Group v. Mitsubishi Motor Credit Ass'n, 356 Fed.

App'x 548, 552-53 (2d Cir. 2009) ("Merchants II").  For the

reasons that follow, it is determined that, whether one applies

New York or California insurance law, plaintiff's lawsuit should

be dismissed, as neither state permits recovery by an insurer

against the insured of a liquidated insurer.  Therefore,

plaintiff's motion for summary judgment is denied, and

defendants' motion for summary judgment is granted.


## Discussion

### (1)

### Choice of Law Framework

The critical issue in the present dispute is whether

Merchants, a solvent insurance company that has unquestionably

satisfied more than its fair share of a jury verdict, is

permitted to collect contribution and indemnity directly from a

party whose insurer – which previously would have paid the claim

for contribution and indemnity – has now become insolvent.  In

this particular case, the insured of the insolvent insurer,

MMCA, is a major, solvent corporation, and likely could afford

to pay the approximately $420,000 that Merchants seeks to

collect.  However, the question really is a broader one, as to

whether insurance companies are permitted to collect directly

8

from any insured of an insolvent insurer, including individuals
who might well not be in a place to fund such a substantial
claim for indemnity and contribution.

To answer the question of whether this direct suit for
indemnity and contribution is permissible, it must first be
determined which state's insurance laws apply. Merchants argues
that the laws of New York apply, and that under New York law,
MMCA is required – as an owner of the DeJean vehicle – to
reimburse Merchants for a portion of the jury verdict rendered
in the DeJean action. MMCA contends, to the contrary, that
California law applies and clearly precludes Merchants from
bringing the present claim for contribution and indemnity
against the insured of an insolvent insurer. Moreover, MMCA
argues that even if New York law, rather than California law,
governs the present dispute, it also should be interpreted to
prevent suit by an insurer against the insured of an insolvent
insurer.

When faced with a conflict over which state's substantive
law governs, "[f]ederal courts exercising diversity jurisdiction
apply the choice-of-law rules of the forum state." Celle v.
Filipino Reporter Enters., Inc., 209 F.3d 163, 175 (2d Cir.
2000). Therefore, New York's choice of law analysis governs the
present dispute. "Under New York's conflict of laws approach,
the New York Court of Appeals has held that '[t]he first step in

any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved.'" <u>Wall v. CSX Transp., Inc.</u>, 471 F.3d 410, 415 (2d Cir. 2006) (alteration in original). Thus, in this case, it must be determined whether New York's law regarding collection by insurers from the insured of insolvent insurers differs from that of California. California's law on this topic is quite clear; New York's much less so. However, an examination of the purpose behind New York's insurance laws compels the conclusion that New York, like California, does not permit the instant suit.

## (2)

### California Law Clearly Precludes this Suit

It appears clear-cut, and the parties do not seem to dispute, that if California law governs the question of whether this suit is permitted, the answer is no. Although California does generally permit suits for contribution and indemnity, <u>see, e.g.</u>, <u>Coca-Cola Bottling Co. v. Lucky Stores, Inc.</u>, 11 Cal. App. 4th 1372, 1378 & n.6, 14 Cal. Rptr. 2d 673, 676-77 & n.6 (Cal. Ct. App. 1992), it has erected clear protections to prevent suits by insurers against the insured of insolvent insurers. <u>See</u> Cal. Ins. Code § 1063.1 <u>et seq.</u>

California's primary protection for its insureds whose
insurers become insolvent is the California Insurance Guarantee
Association ("CIGA"). CIGA is an involuntary association of
insurance providers that exists to protect the public from the
insurance provider insolvencies. CIGA functions by requiring
all insurers doing business in California to pay money into a
fund, which is then used to fund claims against insolvent
insurers, so that their insureds do not bear the burden of
insolvency. See Cal. Ins. Code § 1063; Fireman's Fund Ins. Co.
v. Workers' Comp. Appeals Bd., 181 Cal. App. 4th 752, 765 n.5,
104 Cal. Rptr. 3d 641, 649 n.5 (Cal. Ct. App. 2010) ("[CIGA is]
a statutorily created involuntary association of insurers that
have been admitted to transact business in California."); Black
Diamond Asphalt, Inc. v. Superior Court, 114 Cal. App. 4th 109,
114, 7 Cal. Rptr. 3d 466, 468 (Cal. Ct. App. 2003) ("CIGA was
established to protect members of the public from the insolvency
of insurers by spreading throughout the insurance industry [the
risk of] a loss suffered by an insured as the result of his
insurer's insolvency."); see also Collins-Pine Co. v. Tubbs
Cordage Co., 221 Cal. App. 3d 882, 885, 271 Cal. Rptr. 20, 22
(Cal. Ct. App. 1990) ("CIGA's role is somewhat akin to that of
the Federal Deposit Insurance Corporation in banking, and serves
to enhance public confidence in the insurance industry."). More
specifically, when an insurance provider becomes insolvent, CIGA

11

is tasked with the duty of making payments to cover "some (but not all) claims arising out of [the] insurance polic[ies] of an insolvent insurer." Black Diamond, 114 Cal. App. 4th at 116, 7 Cal. Rptr. 3d at 469 (quoting Interstate Fire & Casualty Ins. Co. v. Cal. Ins. Guarantee Assn., 125 Cal. App. 3d 904, 908, 178 Cal. Rptr. 673 (Cal. Ct. App. 1981)).

However, California insurance law specifically bars payment from CIGA on the claims of any solvent insurers, such as Merchants. See Cal. Ins. Code § 1063.1(c)(5) ("'Covered claims' does not include any obligations to insurers, insurance pools, or underwriting associations, nor their claims for contribution, indemnity, or subrogation, equitable or otherwise . . . ."); E.L. White, Inc. v. City of Huntington Beach, 138 Cal. App. 3d 366, 370-71, 187 Cal. Rptr. 879, 882 (4th Dist. 1982), (explaining that this definition expressly forbids CIGA from making any payments to another insurance company on behalf of an insolvent insurer). Therefore, as a solvent insurer, and as a subrogee seeking indemnity, it is clear that Merchants would be precluded, under California law, from collecting directly from CIGA. See Mercury Ins. Co. v. Enter. Rent-A-Car Co. of Los Angeles, 80 Cal. App. 4th 41, 51, 95 Cal. Rptr. 2d 222, 229 (Cal. Ct. App. 2000) ("Equitable and legal claims for contribution, indemnity, and subrogation by solvent insurers, such as Mercury, are prohibited by section 1063.1. . . ."); E.L.

12

White, 138 Cal. App. 3d at 370, 187 Cal. Rptr. at 882 (holding that a solvent insurer could not seek payment from CIGA under section 1063.1).

For a period of time, this bar on CIGA payments to solvent insurers was the only explicit protection that California insurance law provided against claims brought by solvent insurers. This meant, problematically, that solvent insurers were not expressly barred from suing the insureds of insolvent insurers directly. See E.L. White, 138 Cal. App. 3d at 371, 187 Cal. Rptr. at 882. However, when faced with the issue of whether such suits could proceed, California courts determined that permitting such suits would make little sense, given the purposes of CIGA. Id. CIGA was intended "to protect members of the public from the insolvency of insurers by spreading throughout the insurance industry [the risk of] a loss suffered by an insured as the result of his insurer's insolvency." Black Diamond, 114 Cal. App. 4th at 114, 7 Cal. Rptr. 3d at 468 (emphasis added). Accordingly, California insurance law "exclude[d] [CIGA] coverage where payment would inure to the benefit of a solvent insurer" because solvent insurers were meant to bear the burden of paying such claims, and were not intended to benefit from CIGA payments. Id.

California courts thus reasoned that California insurance law must also have intended to prevent direct indemnity suits by

13

solvent insurers against the insureds of insolvent insurers.

See E.L. White, 138 Cal. App. 3d at 370, 187 Cal. Rptr. at 881.

According to California courts, there were two reasons why such

suits would be objectionable: (1) they would expose CIGA to the

possibility of indirectly making payments to insurers;[6] and

(2) they would expose the insureds of insolvent insurers to

liability, even though the purpose of the CIGA legislation is to

protect such parties in the event of insurer insolvency. Id.

Therefore, in addition to barring insurers from collecting from

CIGA, California law was also held to bar such parties from

suing the insured of an insolvent insurer directly.

Subsequent to the E.L. White decision, the rule that

insurers cannot sue the insured of insolvent insurers was

codified into California's Insurance Code. California's

Insurance Code now provides:

> An insurer . . . may not maintain, in its own name
> or in the name of its insured, any claim or legal
> action against the insured of the insolvent insurer
> for contribution, indemnity or by way of
> subrogation, except insofar as, and to the extent

---

[6]  In E.L. White, the California Court of Appeal explained the dilemma that would be created if an insurer could directly sue the insured of an insolvent insurer. 138 Cal. App. 3d at 371, 187 Cal. Rptr. at 882. In that situation, the insured of the insolvent insurer might, after paying such a claim himself, be able to turn to CIGA for reimbursement – a result that the court found unacceptable: "The fact that the payment would go from CIGA to a subrogated insurer through the conduit of an insured of an insolvent insurer does not sanitize the transaction. Such is merely an artifice aimed at circumventing the clear command of the Legislature." Id.

> only, that the claim exceeds the policy limits of
> the insolvent insurer's policy.

Cal. Ins. Code § 1063.1(c)(5). In <u>Black Diamond</u>, a California Court of Appeal explicitly acknowledged this new development, as well as the purpose behind this new provision: "By this provision, the Legislature adopted in part the holding in <u>E.L. White</u>, but only up to the policy limits that the insured obtained for himself. This puts the insured in the same position as though his insurer had not become insolvent, but not in a better position." 114 Cal. App. 4th at 119, 7 Cal. Rptr. 3d at 474.

Accordingly, under California's Insurance Code, it is clear that a solvent insurer cannot sue the insured of an insolvent insurer for any amount up to the insured's policy limit. Thus, under California law, this suit by Merchants against MMCA to collect an amount less than MMCA's policy limit with Reliance would be barred.

### (3)

### New York Law Also Precludes This Suit

It is less clear whether New York law would also preclude this lawsuit, as no New York court appears to have directly confronted this issue. However, considering that New York also has a fund to protect the insureds of insolvent insurers, it is

likely that New York courts would follow reasoning similar to
California courts and would hold the present suit to be barred.

Preliminarily, Merchants is correct that MMCA qualifies as
an "owner" of the DeJean vehicle, such that New York law would
hold MMCA vicariously liable for the negligent conduct of Jerry
DeJean.[7]  According to N.Y. Veh. & Traf. Law § 388(1):

> Every owner of a vehicle used or operated in this state
> shall be liable and responsible for death or injuries to
> person or property resulting from negligence in the use or
> operation of such vehicle, in the business of such owner or
> otherwise, by any person using or operating the same with
> the permission, express or implied, of such owner.

Id.  As was explained previously, "New York courts have
consistently held that owners of leased vehicles . . . are
vicariously liable under § 388 for the negligent operation of
those vehicles."[8]  Merchants I, 525 F. Supp. 2d at 312 (citing
Litvak v. Fabi, 8 A.D.3d 631, 632, 780 N.Y.S.2d 155, 155-56
(2d Dep't 2004), and Sullivan v. Spandau, 186 A.D.2d 641, 642-
43, 589 N.Y.S.2d 49, 50-51 (2d Dep't 1992)).  Thus, because MMCA
is an "owner" of the DeJean vehicle under New York law, and

---

[7] Indeed, MMCA appears to have abandoned its argument that it
does not qualify as an "owner" under New York law.  Merchants
II, 356 Fed. App'x at 551 n.1.

[8] The Graves Amendment later preempted this provision of New York
law, such that non-negligent lessors can no longer be held
liable by virtue of their status as "owners."  See Merchants II,
356 Fed. App'x at 551.  However, as the Second Circuit held,
this provision of the Graves Amendment does not apply to the
present dispute.  Id. at 552.

because Jerry DeJean was held jointly and severally liable with DeeJay and Hess in the DeJean action, New York law typically would permit a suit for contribution and indemnity by Merchants – which paid more than its "fair share" in the DeJean action – against MMCA.  See Dole v. Dow Chemical Co., 30 N.Y.2d 143, 153, 282 N.E.2d 288, 295, 331 N.Y.S.2d 382, 391-92 (1972) ("Right to apportionment of liability or to full indemnity . . . as among parties involved together in causing damage by negligence, should rest on relative responsibility . . . ."); see also Kelly v. Long Island Lighting Co., 31 N.Y.2d 25, 29, 286 N.E.2d 241, 243, 334 N.Y.S.2d 851, 854 (1972) (explaining that Dow changed New York law to permit "apportionment of damages among joint or concurrent tort-feasors").

Nevertheless, New York has a demonstrated policy of protecting insureds of insolvent insurers that is best interpreted to bar the present lawsuit for contribution and indemnity brought by a solvent insurer.  To be sure, Merchants is correct that New York law is far less explicit than California law on this point.  New York's insurance laws do not expressly forbid the instant suit, and the question of whether such suits should, therefore, be allowed to proceed has not been addressed by New York courts.  However, in light of the purpose and structure of New York's insurance law, it is now determined

that New York would not permit a solvent insurer like Merchants

to sue directly the insured of an insolvent insurer.

Much like California, New York has established a fund that

is designed to collect payments from solvent insurers to use to

make payments on behalf of insolvent insurers.  See N.Y. Ins.

Law § 7604 et seq.  This Public Motor Vehicle Liability Security

Fund ("PMV Fund") is used "to pay allowed claims of injured

parties and policyholders under insurance policies . . .

remaining unpaid, in whole or in part, by reason of the

insurer's insolvency or its inability to meet its insurance

obligations."  N.Y. Ins. Law § 7604(a) (emphasis added).  An

"injured party claim" is defined in the statute as "a claim of a

person, other than a policyholder or assured, who suffered an

injury to his person or property arising out of an insured

incident within the coverage of the policy."  N.Y. Ins. Law

§ 7602(h).  A "policy holder claim" is defined as "a claim of a

policyholder or assured within the coverage of the policy,

wherein such person suffered loss or damage under the coverage

of the policy or where such person has paid an injured party

claim, subject to allowance of such policyholder claim in a

proceeding under article seventy-four of this chapter."

§ 7602(i).

This language in the statute restricting PMV Fund payments

to "injured parties and policyholders" appears to indicate that,

just as in California, solvent insurers are barred from
collecting from New York's PMV Fund. Although Merchants has
argued, correctly, that there is no explicit New York precedent
holding that "injured parties" does not include solvent insurers
seeking contribution and indemnity, there is simply no good
argument that the term "injured parties" should be extended so
far. To the contrary, as an insurer doing business in New York,
Merchants falls precisely within the class intended to supply
funding into the PMV Fund, not the class intended to draw from
the PMV Fund. See N.Y. Ins. Law § 7604(b)(2). Moreover, by
defining an "injured party claim" as one by a person who
suffered injury "to his person or property," the statute seems
to require some level of direct injury to the injured party
claimant, not the type of third-party injury suffered by an
insurer who has paid such a claim. Cf. N.Y. Ins. Law § 7602(h).
Nor does the definition of "policy holder claim" encompass any
claims made by solvent insurers seeking indemnity and
contribution, as insurers seeking indemnity would not qualify as
"assured[s] within the coverage of the policy . . . ." See
§ 7602(i).

However, just as California's statutory insurance law, pre-
E.L. White, clearly barred payments from CIGA to insurers but
said nothing about whether a solvent insurer could collect
directly from the insured of an insolvent insurer, New York law

19

is also silent on this point. But this silence does not equate

to permission: much as California courts concluded that the

purpose behind CIGA compelled a finding that solvent insurers

could not collect from the insured of insolvent insurers, New

York courts examining the parallel issue under New York law

would likely draw the same conclusion.

New York law must be read to bar suits by solvent insurers

against the insured of insolvent insurers in order to protect

the purpose and integrity of New York's PMV Fund. It is clear

that the PMV Fund was designed to protect both injured parties

and policyholders.[9] If solvent insurers were permitted to sue

---

[9] In urging for creation of the PMV Fund, New York's
Superintendent of Insurance poignantly explained:

> The failure of [an insurance] company produces most
> unfortunate consequences. For instance, when any
> company fails, those claimants who have been injured
> and the dependents of those who have been killed by
> automobiles insured in the company must present claims
> against individuals who are no longer insured.
> Financial security is replaced by financial
> insecurity. After the delays incident to a
> liquidation or rehabilitation proceeding these
> claimants may some day receive a portion of that to
> which they are legitimately entitled. . . . In the
> same process hardship is also imposed upon the
> insured. The policyholder who has relied upon his
> insurance suddenly finds himself confronted with
> claims, lawsuits and judgments, against which he is no
> longer protected. If he owns a home or has money in
> the bank or other resources, they are subject to levy
> and attachment. If he is less fortunate in the
> possession of worldly goods, he is faced with
> garnishees, instalment [sic] payments . . . and other
> legal procedures.

these policyholders directly for contribution and indemnity, then New York would be faced with an odd result. Whereas the PMV Fund was initially created so that solvent insurers would fund the claims of insureds of insolvent insurers who purchased their policies in good faith, permitting such lawsuits would turn this purpose on its head and would result in one of two unacceptable outcomes.

One possible outcome of permitting suits by insurers against the insured of insolvent insurers is that the insured might be forced to pay the solvent insurer, but then could turn to the PMV Fund to repay this claim. However, as explained above, such an outcome would be antithetical to the structure of the PMV Fund, which was designed to require solvent insurers to pay into the fund, not draw out of it. It is for this reason that the PMV Fund specifies that it will pay only the claims of "injured parties" and "policyholders." See N.Y. Ins. Law § 7604(a). Thus, it seems logical that the PMV Fund – like CIGA – would refuse to pay out claims ultimately destined to go to solvent insurers, even though the payment in this case would go "through the conduit of an insured of an insolvent insurer . . . ." E.L. White, 138 Cal. App. 3d at 371 (explaining that "[t]he

Eighty-Eighth Annual Report of the Superintendent of Insurance, For the Year Ended December 31, 1946, at 44a, N.Y. Legislative Document (1947) No. 80.

fact that the payment would go from CIGA to a subrogated insurer through the conduit of an insured of an insolvent insurer [did] not sanitize the transaction").

However, if insurers were allowed to collect from the insured of insolvent insurers under New York law, but the PMV refused to reimburse such claims, a second unacceptable outcome would result: the insured of the insolvent insurer would be forced to pay, out of pocket, for a claim that he specifically thought he purchased insurance to avoid. Again, such a result would run counter to the purpose of the PMV Fund, which was specifically created to:

> protect policyholders, who had purchased insurance to guard against situations where they were held liable to others as the result of motor vehicle accidents for damages, from the predicament of coming to a day when they were held liable to another for damages and had the unhappy experience of discovering their insurance company was financially unable to give the protection purchased by them in good faith.

Traveler's Indem. Co. v. State, 57 Misc.2d 565, 571, 293 N.Y.S.2d 181, 187 (Ct. Cl. 1968), aff'd, 33 A.D.2d 127, 305 N.Y.S.2d 689 (3d Dep't 1969), aff'd, 28 N.Y.2d 561, 268 N.E.2d 323, 319 N.Y.S.2d 609 (1971); see also In re Ancillary Receivership of Reliance Ins. Co., 35 A.D.3d 191, 191, 825 N.Y.S.2d 466, 466 (1st Dep't 2006) (explaining that New York's security funds were designed to protect against "the potentially devastating effects of insurance company failures"). Given this purpose behind the PMV Fund, it is highly unlikely

that New York's legislature intended to permit a solvent
insurance company to force an insured to pay it directly when
the insured found itself in the "predicament" of having a
defunct insurer.  Moreover, as mentioned earlier, while in this
particular case MMCA, as the insured of the insolvent insurer,
might be able to afford to pay Merchant's claim against it, in
the case of many, if not most, individual insurance purchasers,
permitting recovery by solvent insurers could prove devastating
to their personal finances.

     In further support of the conclusion that New York courts
would, if faced with this question, go the way of California
courts and forbid such suits, it is noted that courts in New
York have recognized that several other states bar these suits
on similar policy grounds.  For instance, as recognized by New
York's Fourth Department in <u>Aetna Casualty & Surety v. Ohio
Insurance Guaranty Association</u>, Ohio statutory law bars insurers
from maintaining subrogation claims against either the insured
of an insolvent insurer or against the Ohio Insurance Guaranty
Association ("OIGA"), on the ground that OIGA was intended "to
create a limited fund for the protection of the insureds of
insolvent insurers and claimants against those insureds, <u>but not
to protect other insurers</u>."[10]  175 A.D.2d 621, 622, 573 N.Y.S.2d

_____
[10] OIGA, the Ohio Insurance Guaranty Association, is an
association similar to CIGA and the PMV Fund.  Much like CIGA

23

942, 943 (4th Dep't 1991) (emphasis added).  Similarly, in

Travelers Indemnity Co. v. Gosline, the Northern District of New

York noted that Illinois insurance law bars contribution and

indemnity claims against insureds of insolvent insurers because

"it is evidently clear that the Illinois legislature did not

want solvent insurers to be reimbursed from the proceeds of the

Guaranty Fund."  No. 01-CV-794, 2003 WL 21230376, *2 (N.D.N.Y.

May 27, 2003).  Of course, none of this precedent compels the

conclusion that New York's insurance laws must be read in the

same way.  However, in addition to the lack of cases going the

other way, these cases illustrate that it is rational and fair

to conclude that solvent insurers should not be the

beneficiaries of guarantee fund payments, directly or

indirectly, and that insureds of insolvent insurers should also

not be forced to fund claims by solvent insurers out of pocket.

For these reasons, although New York courts have not yet

ruled on this issue, it is now determined that if faced with the

issue, New York courts would hold the present suit to be barred.

It is apparent that New York's PMV Fund was created to protect

insureds at the expense of solvent insurers.  This purpose

and the PMV Fund, OIGA is charged with the duty of administering
funds, collected from insurers, to protect the public against
the harm caused by insurer insolvency.  See Katz v. Ohio Ins.
Guar. Assn., 812 N.E.2d 1266, 1268 (Ohio 2004) ("OIGA collects
funds from member insurers and administers those funds to
protect insureds and third-party claimants from certain losses
resulting from the insolvency of its members.").

behind the PMV Fund compels the conclusion that New York, like California, would find that solvent insurers cannot sue the insureds of insolvent insurers for contribution and indemnity, at least to collect any amount that previously would have been covered by the insured's now-insolvent insurer.[11]

Having determined that New York law and California law do not, in fact, conflict, there is no need for further analysis. Because under either state's laws, Merchants is not permitted to bring suit against MMCA for contribution and indemnity, summary judgment in favor of MMCA is warranted.

---

[11] It may be that if faced with a situation where a solvent insurer sought to collect contribution and indemnity payments from an insured that were in excess of the original policy coverage that the insured had with its insolvent insurer, New York – like California – would not bar collection of this excess amount. However, this situation does not present itself and thus no determination is made as to how New York courts would rule in this circumstance.

## Conclusion

For the reasons stated above, plaintiff's motion for summary judgment is denied and defendants' motion for summary judgment is granted.

Dated:     Brooklyn, New York
           August 13, 2010

                              SO ORDERED:

                              _____/s/_____
                              David G. Trager
                              United States District Judge